**ROTHMAN ROCCO LaRUFFA, LLP**
3 West Main Street
Elmsford, New York 10523
T: (914) 478-2801
F: (914) 478-2913
Matthew P. Rocco, Esq.

*Attorneys For Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANK ACCOSTA AND DAVID ROSENSTOCK, | Civil Action No.: 17-7804 (NSR) |
| Plaintiffs, | Hon. Nelson S. Roman, U.S.D.J. |
| -against- | |
| LORELEI EVENTS GROUP INC., AND LORRAINE TOTARO, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii, iv

UNDISPUTED FACTS ........................................................................................................2

I.    Lorelei Is An Events Production Company Solely Owned And Managed By Lorraine Totaro ..........................................................................................................2

II.    Plaintiffs Work For Lorelei As "Account Executives," And, In That Capacity, Are Directly Supervised By Their Boss, Defendant Lorraine Totaro ..........................2

III.    Lorelei Does Not Maintain Any Job Descriptions For Employees, And The Job of "Account Executive" Requires Only A High School Diploma .................................3

IV.    Lorelei Has A Years-Long Practice Of Paying Plaintiffs' Bi-Monthly Salary And Incentive Payments ...........................................................................................3

V.    Beginning In The Year 2016, Lorelei Starts Willfully Paying Plaintiffs' Salaries Late ...........................................................................................................................4

VI.    Beginning in 2017, Lorraine Totaro Willfully Stops Paying Accosta and Rosenstock's salaries, And Then Converts Plaintiffs To "Independent Contractors" to Transfer tax Burdens From The Company To The Plaintiffs .............5

VII.    After Having Not Paid Plaintiffs Any Salary For Three (3) Months, Lorraine Totaro Drafts And Signs A Contract Acknowledging She Owes The Plaintiffs Their Salaries And Promises To Pay Them .................................................................6

VIII.    Lorraine Totaro Writes Plaintiffs Two Memoranda Stating That She Is Switching Plaintiffs To Independent Contractors Because She Can't Sign Enough Clients, And That By Switching Plaintiffs To "Independent Contractors," They Can Have More Control And Autonomy Over Their Jobs ...........8

IX.    Lorelei Fails To Produce Any Payroll Or Other Documents In Discovery And Also Fails To Identify Any Legal Exemptions Which Would Permit It To Pay Plaintiffs Late And Then Nothing At All .................................................................9

ARGUMENT .....................................................................................................................10

I.    There Is No Dispute That Plaintiffs Were Not Paid Their Agreed-Upon Wages (Or Any Wages At All) For Full Time Employment From January 2017 Through March 2017, In Violation of The Fair Labor Standards Act And New York Labor Law ...................................................................................................10

II.      There Can Be No Dispute That Plaintiffs Were Paid Untimely All Throughout 2017, In Violation of Fair Labor Standards Act And New York Labor Law ..............12

III.     Lorraine Totaro, As The Sole Owner and Day-To-Day Manager Of Lorelei Events Group, Is Clearly An "Employer" Under FLSA New York Labor Law And Is Jointly And Severally Liable For Its Wage and Hour Violations ....................13

IV.      There Can Be No Dispute That Lorelei Violated NYLL By Failing To Provide Wages Statements ..........................................................................................................14

V.       There Can Be No Dispute That Lorelei And Totaro Were Unjustly Enriched By Their Actions of Stiffing Plaintiffs on Their Wages....................................................15

VI.      There Is No Dispute That Lorelei Has Failed To Pay Plaintiffs' 401(k) Contributions And Have Failed To Make Contributions Due Under Employee Retirement Income Security Act...............................................................................16

CONCLUSION......................................................................................................................................17

# TABLE OF AUTHORITIES

**CASES:**

*Anthuis v. Colt Indus. Operating Corp.*,
　971 F.2d 999 (action to recover benefits under ERISA) .........................................................16

*Belizaire v. RAV Investigative and Sec. Servs. Ltd.*,
　61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) ..............................................................................11

*Boggs v. Boggs*,
　520 U.S. 833 (1997) ..............................................................................................................16

*Bongat v. Fairview Nursing Care Ctr., Inc.*,
　341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004) ...........................................................................15

*Brooklyn Sav. Bank v. O'Neil*,
　324 U.S. 697, 711, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) ......................................................12

*Carter v. Dutchess Cmty. Coll.*,
　735 F.2d 8 (2d Cir. 1984) .......................................................................................................13

*Coley v. Vannguard Urban Improvement Ass'n*,
　No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609, at *29-30 (E.D.N.Y.
　　Mar. 29, 2018) .....................................................................................................................12

*Golden Pac. Bancorp v. FDIC*,
　273 F.3d 509, 519 (2d Cir. 2001) ...........................................................................................15

*Hernandez v. NJK Contractors, Inc.*,
　09-CV-4812(RER), 2015 U.S. Dist. LEXIS 57568, 2015 WL 1966355, at *42
　　(E.D.N.Y. May 1, 2015) ......................................................................................................12

*Humphrey v. RAV Investigative & Sec. Servs. Ltd.*,
　12-CV-3581(NRB), 2016 U.S. Dist. LEXIS 177572, 2016 WL 7190073, at *6
　　(S.D.N.Y. Nov. 29, 2016) ....................................................................................................13

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
　542 F.3d 290, 310 (2d Cir. 2008) ...........................................................................................10

*Rogers v. City of Troy*,
　148 F.3d 52, 55 (2d Cir. 1998) ..........................................................................................10, 12

*Santillan v. Henao*,
　822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ...........................................................................11

*Saucedo v. On the Spot Audio Corp.*,
    16-CV-451(CBA)(CLP), 2016 U.S. Dist. LEXIS 177680, 2016 WL 8376837, at \*6
    (E.D.N.Y. Dec. 21, 2016) ............................................................................................11

*Teri v. Spinelli*,
    980 F. Supp. 2d 366, 373 (E.D.N.Y. 2013) ...............................................................14

*Vega v. CM & Assoc. Constr. Mgmt., LLC*,
    2019 NY Slip Op 06459, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (App. Div. 1st Dept.) ...........13

*Villar v. Prana Hosp., Inc.*,
    14-CV- 8211(RA)(JCF), 2017 U.S. Dist. LEXIS 54962, 2017 WL 1333582, at \*4
    (S.D.N.Y. Apr. 11, 2017) ............................................................................................11

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61, 71 (2d Cir. 2003) ....................................................................................13

**STATUTES:**

29 U.S.C. §§ 206, 207.......................................................................................................10

29 U.S.C. § 216(b) ...........................................................................................................13

Plaintiffs Frank Accosta ("Accosta") and David Rosenstock ("Rosenstock") (together "Plaintiffs"), submit this memorandum of law in support of their motion for summary judgment against Defendants Lorelei Events Group, Inc. ("Lorelei") and its sole owner, principal and supervisor, Lorraine Totaro, ("Totaro"), for late-paid and unpaid wages. Here, it is undisputed that Plaintiffs worked from January through March 2017 without receiving any pay whatsoever. Further, there is no dispute that, throughout the year 2016, Defendants consistently paid Plaintiffs their salaries long after the payroll due dates, sometimes months late, in violation of federal and state wage and hour laws. Accordingly, summary judgment should be granted in favor of the Plaintiffs.

## UNDISPUTED FACTS

### I.   Lorelei Is An Events Production Company Solely Owned And Managed By Lorraine Totaro

Founded in 1986, Lorelei Events Group, Inc. is a New York State corporation. Lorelei is an event productions company that plans fundraisers, corporate retreats, corporate conferences, and similar events. (Rule 56.1 Stmt. ¶1). For all times relevant to this action, Lorraine Totaro was the sole owner and principal of Lorelei Events Group, Inc. (Rule 56.1 Stmt. ¶2). For all times relevant to this action, both Plaintiffs Accosta and Rosenstock were employed as "account executives" with Lorelei. (Rule 56.1 Stmt. ¶3).

### II.   Plaintiffs Work For Lorelei As "Account Executives," And, In That Capacity, Are Directly Supervised By Their Boss, Defendant Lorraine Totaro

Accosta and Rosenstock were both hired directly by Defendant Totaro. (Rule 56.1 Stmt. ¶4). At all relevant times of their employment, Plaintiffs Frank Accosta and Rosenstock were "employees" of Lorelei and their wages were given IRS "W-2" tax form treatment. (Rule 56.1 Stmt. ¶5). For all relevant times of their employment, Totaro was the direct supervisor and boss

for Plaintiffs Accosta and Rosenstock, and she alone was responsible for overseeing and monitoring Plaintiffs' work. (Rule 56.1 Stmt. ¶6).

### III.    Lorelei Does Not Maintain Any Job Descriptions For Employees, And The Job of "Account Executive" Requires Only A High School Diploma

For all times relevant to this action, Lorelei did not maintain job descriptions for either Accosta or Rosenstock's position. To wit, no job descriptions were provided in response to Plaintiffs' request for production of documents. (Rule 56.1 Stmt. ¶7). The job of "account executive," requires only that Accosta and Rosenstock have a high school degree. (Rule 56.1 Stmt. ¶8). The job of an account executive involves planning dinners, conferences, and fundraising events for clients, under the supervision of Totaro. (Rule 56.1 Stmt. ¶9). Both Accosta and Rosenstock were full-time employees who worked five (5) days a week, and each earned an annual salary of $85,000. (Rule 56.1 Stmt. ¶10).

### IV.    Lorelei Has A Years-Long Practice Of Paying Plaintiffs' Bi-Monthly Salary And Incentive Payments

Both Accosta and Rosenstock participated in Lorelei's 401(k) plan, which provided an employer match of 2% of salary, irrespective of whether an employee deferred his own wages into the plan. (Rule 56.1 Stmt. ¶11). In addition to their salaries, Plaintiffs received a performance incentive equal to ten percent (10%) of the price of the contract they were handling. Performance incentive payments were paid in addition to Plaintiffs' regular salaries. (Rule 56.1 Stmt. ¶12). All work performed by Accosta and Rosenstock was overseen by Lorraine Totaro, who acted as their direct supervisor. (Rule 56.1 Stmt. ¶13).

In the years 2015 through 2016, Lorelei maintained two (2) pay periods per month; with regular paydays occurring on the first (1st) and sixteenth (16th) day of every month. (Rule 56.1 Stmt. ¶14). For all relevant times prior to January 2016 while employed as "account

executives," Plaintiffs have always received regular, bi-monthly salary payments in accordance with the bi-monthly salary schedules set forth above. (Rule 56.1 Stmt. ¶15).

**V.      Beginning In The Year 2016, Lorelei Starts Willfully Paying Plaintiffs' Salaries Late**

However, throughout the year 2016, Defendant Lorraine Totaro would call Lorelei's payroll vendor, a company called "Paychex," and tell them not to make the regular payroll to Accosta and Rosenstock because the company was low on funds. (Rule 56.1 Stmt. ¶16).

To wit, in 2016, multiple pay periods would come and go without Plaintiffs ever getting paid. (Rule 56.1 Stmt. ¶16). When Plaintiffs confronted Lorelei's owner, boss and direct supervisor Lorraine Totaro about failing to be paid, Totaro said the company had poor cash flow and she promised to "catch up" at a later date when she got more money in. (Rule 56.1 Stmt. ¶18).

In the year 2016, Accosta was repeatedly paid late as follows on the below chart, and Rosenstock was also paid his $85,000 per year salary late each and every pay period in that year:

| Pay Period | Amount | Check Due Date | Date Actually Paid |
|---|---|---|---|
| 1/16/16 to 1/31/16 | $3,541.66 | February 1, 2016 | April 19, 2016 |
| 2/1/16 to 2/15/16 | $3,783.34 | February 16, 2016 | April 27, 2016 |
| 2/16/16 to 2/29/16 | $3,541.66 | March 1, 2016 | May 5, 2016 |
| 3/1/16 to 3/15/16 | $3,541.67 | March 16, 2016 | August 10, 2016 |
| 3/16/16 to 3/31/16 | $3,541.66 | April 1, 2016 | September 15, 2016 |
| 4/1/16 to 4/15/16 | $3,541.66 | April 16, 2016 | September 15, 2016 |
| 4/16/16 to 4/30/16 | $3,541.67 | May 1, 2016 | September 15, 2016 |
| 5/1/16 to 5/15/16 | $3,541.66 | May 16, 2016 | September 15, 2016 |
| 5/16/16 to 5/31/16 | $3,541.66 | June 1, 2016 | June 16, 2016 |
| 6/1/16 to 6/15/16 | $3,541.67 | June 16, 2016 | September 15, 2016 |
| 8/1/16 to 8/15/16 | $3,541.66 | August 16, 2016 | September 6, 2016 |
| 8/16/16 to 8/31/16 | $3,651.66 | September 1, 2016 | September 12, 2016 |
| 9/1/16 to 9/15/16 | $3,541.66 | September 16, 2016 | September 28, 2016 |
| 9/16/16 to 9/30/16 | $3,541.66 | October 1, 2016 | October 14, 2016 |
| 10/1/16 to 10/15/16 | $3,651.67 | October 16, 2016 | November 11, 2016 |
| 10/16/16 to 10/31/16 | $3,541.67 | November 1, 2016 | November 23, 2016 |

| 11/1/16 to 11/15/16 | $3,541.67 | November 16, 2016 | December 12, 2016 |
| 11/16/16 to 11/30/16 | $3,541.67 | December 1, 2016 | December 15, 2016 |
| 12/1/16 to 12/15/16 | $3,541.67 | December 16, 2016 | January 23, 2017 |
| 12/1/16 to 12/31/16 | $3,541.67 | January 1, 2017 | March 7, 2017 |

(Rule 56.1 Stmt. ¶19).

During the dates referenced in the paragraph above, Lorelei would pay Plaintiffs with checks from the general ledger, and not provide them with wage statements or pay stubs. (Rule 56.1 Stmt. ¶20).

### VI. Beginning in 2017, Lorraine Totaro Willfully Stops Paying Accosta and Rosenstock's Salaries, And Then Converts Plaintiffs To "Independent Contractors" To Transfer Tax Burdens From The Company To The Plaintiffs

In January, February and March 2017 Accosta was an active employee of Lorelei assisting in organizing the City Parks Conference in Minneapolis, Minnesota. (Rule 56.1 Stmt. ¶21). Even though Accosta was an active employee working on the City Parks Conference, Defendants failed to pay his salary in January, February or March 2017. (Rule 56.1 Stmt. ¶22). The decision not to pay Accosta for January, February and March 2017 was made directly by Lorraine Totaro herself. (Rule 56.1 Stmt. ¶23).

David Rosenstock was an employee of Lorelei in January, February and March 2017. (Rule 56.1 Stmt. ¶24). During January, February and March of 2017, Rosenstock was working in the office only. (Rule 56.1 Stmt. ¶25). However, in January, February and March 2017, Lorelei stopped paying Rosenstock entirely. (Rule 56.1 Stmt. ¶26). The decision not to pay Rosenstock for January, February and March 2017 was made directly by Lorraine Totaro herself. (Rule 56.1 Stmt. ¶27).

In April 2017, Defendant Totaro made the decision to re-classify Accosta and Rosenstock as "independent contractors," rather than employees. (Rule 56.1 Stmt. ¶28). Totaro converted Accosta and Rosenstock to "independent contractors" solely because Lorelei sought to

escape paying payroll taxes on behalf of these employees. (Rule 56.1 Stmt. ¶29). Although Plaintiffs were converted from "employees" to "independent contractors," their job duties or responsibilities did not change in any way. (Rule 56.1 Stmt. ¶30).

**VII.    After Having Not Paid Plaintiffs Any Salary For Three (3) Months, Lorraine Totaro Drafts And Signs A Contract Acknowledging She Owes The Plaintiffs Their Salaries And Promises To Pay Them**

In April 2017, Lorraine Totaro drafted a Memorandum to the Plaintiff Accosta, whereby Totaro acknowledged that Lorelei had not paid Accosta his wages for the months of January, February and March 2017, and promised to repay him in the future for his wages and 401(k) contributions that were due. (Rule 56.1 Stmt. ¶31).

LORELEI EVENTS GROUP
708 THIRD AVENUE
NEW YORK, NEW YORK 10017

Date:        April 7, 2017

Re:          LETTER OF AGREEMENT BETWEEN LORELEI EVENTS GROUP
             and FRANK ACCOSTA

Subject:     PAYMENT OF UNRECEIVED PAYROLL

This Agreement is between Lorelei Events Group and Frank Accosta who has provided services to Lorelei as an Account Executive.

It is agreed that Lorelei Events Group, at the time of this Agreement, is indebted to Frank Accosta the equivalent of six semi-monthly payroll periods covering January 1, 2017 through March 31, 2017 while an employee of Lorelei Events Group:

Gross Salary: $21,250.02
401K:         $ 1,487.48

Lorelei Events Group agrees to pay Frank Accosta its indebtedness to him as an employee under the arrangements and obligations that existed during this period as an employee according to the schedule set below. Lorelei Events Group agrees to pay Frank Accosta the gross amount (per pay period times six) stated above less the withholding of applicable federal, state and local taxes (Social Security, Medicare, Federal income Tax, NY State Income tax, NY Disability tax); the Lorelei Events Group 2% contribution to the plan administered retirement fund and the employee 5% contribution to the plan administered retirement fund.

Salary payments to Frank Accosta will be made through Paychex; Paychex will make the required deductions and provide net salary check with documentation for all withholdings. In good faith, Lorelei Events Group will process payment to Frank Accosta as follows:

Eight monthly payments of $2,656.27(salary) and $186.00 (401K) beginning May 1, 2017 through and including December 1, 2017

IN WITNESS WHEREOF, Frank Accosta and Lorelei Events Group, Inc. have executed this Agreement as of the date first set forth above.

BY _____          BY _____
FRANK J. ACCOSTA                   LORRAINE TOTARO
                                   FOUNDER, LORELEI EVENTS GROUP, INC.

DATE: 4/14/17                      DATE: 4/17/17

6

Totaro admits that none of the monies that she promised to pay Accosta in her signed agreement were ever paid, despite the contract acknowledging that Lorelei had not paid him at all in 2017 and owed him three (3) months of back wages and benefits. (Rule 56.1 Stmt. ¶32).

In April 2017, Lorraine Totaro drafted a Memorandum to the Plaintiff Rosenstock whereby Totaro acknowledged that Lorelei had not paid Rosenstock his wages for the months of January, February and March 2017, and promised to repay him in the future. (Rule 56.1 Stmt. ¶33).

LORELEI EVENTS GROUP
708 THIRD AVENUE
NEW YORK, NEW YORK 10017

Date:      April 7, 2017

Re:        LETTER OF AGREEMENT BETWEEN LORELEI EVENTS GROUP
           And DAVID ROSENSTOCK

Subject:   **PAYMENT OF UNRECEIVED PAYROLL**

This Agreement is between Lorelei Events Group and David Rosenstock who has provided services to Lorelei as an Account Executive.

It is agreed that Lorelei Events Group, at the time of this agreement, is indebted to David Rosenstock the equivalent of six semi-monthly payroll periods covering January 1, 2017 through March 31, 2017 while an employee of Lorelei Events Group.
        The gross pay for each period is $3,541.67.

| | |
|---|---|
| The total net pay due is | $10,520.76 |
| The total taxes due is | $ 4,279.68 |
| The total 401K due is | $ 2,125.02 |

Lorelei Events Group agrees to pay David Rosenstock their indebtedness to him as an employee under the arrangements and obligations that existed during this period as an employee according to the schedule set below. Lorelei Events Group agrees to pay David Rosenstock the gross amount (per pay period times six) stated above less the withholding of applicable federal, state and local taxes (Social Security, Medicare, Federal Income Tax, NY State Income tax, NY Disability tax); the Lorelei Events Group 2% contribution to the plan administered retirement fund and the employee 5% contribution to the plan administered retirement fund. The remaining portion constitutes the net payment to David Rosenstock and this indebtedness is to be paid as follows:

        Beginning May 1, 2017 through and including December 1, 2017,
        Eight monthly payments of $1,753.46(salary) & $713.28 (withholding) & $354.17(401K)
        $720.75 (Health & Dental Insurance

Lorelei Events Group agrees to provide documentation for these withholdings and calculations for each pay period as stated above.

IN WITNESS WHEREOF, David Rosenstock and Lorelei Events Group, Inc. have executed this Agreement as of the date first set forth above.

BY: _____        BY: _____
DAVID ROSENSTOCK                     LORRAINE TOTARO
                                     FOUNDER, LORELEI EVENTS GROUP, INC.

DATE: 4/18/17 _____        DATE: _____

7

Totaro admits that none of the monies listed in the memorandum were ever paid to Rosenstock. (Rule 56.1 Stmt. ¶34).

On or around April 2017, Lorraine Totaro stated that she was "converting" Plaintiffs from employees to independent contractors as part of her plan to reduce costs by shifting the federal withholding tax burden to Plaintiffs. As part of that "conversion," Lorelei also cut Accosta's compensation in half. (Rule 56.1 Stmt. ¶35).

### VIII. Lorraine Totaro Writes Plaintiffs Two Memoranda Stating That She Is Switching Plaintiffs To Independent Contractors Because She Can't Sign Enough Clients, And That By Switching Plaintiffs To "Independent Contractors," They Can Have More Control And Autonomy Over Their Jobs

On April 12, 2017, Plaintiffs received an e-mail memorandum from Lorelei's owner, Defendant Lorraine Totaro. (Rule 56.1 Stmt. ¶36). The memorandum commented on Totaro switching Plaintiffs from "W-2" to "Form 1099" workers, and characterized the "new arrangement" as a

> stricter way of safeguarding YOUR salaries…if you thought about the new setup in a creative and open way you would see that you could actually earn MORE this way, have more control and autonomy…
>
> [i]n regards to "what we tell our clients?" – why is this such a sticking point? We have nothing to tell our clients. You are hired by Lorelei, you are their account executives. The only changes are internal i.e. BOOKKEEPING, and different types of billing (i.e. associates).

(Rule 56.1 Stmt. ¶37).

On May 9, 2017, Plaintiffs received an additional memorandum from Lorelei's owner, Defendant Lorraine Totaro. (Rule 56.1 Stmt. ¶38). The May 9, 2017 memo advised that Totaro was writing us "to alert you to a very pressing issue that undermines any hope of stabilizing Lorelei…."

> Because projected client contracts have not been signed (ACF) and probably won't be signed (SRM and BH), there is no potential

8

income to meet the payment schedules that we negotiated with you
in good faith.

The memorandum further goes on to detail Lorelei's plans for making payroll and paying Plaintiffs back pay based on client commitments that Lorraine Totaro had secured through December 30, 2017.  (Rule 56.1 Stmt. ¶39).

### IX.   Lorelei Fails To Produce Any Payroll Or Other Documents In Discovery, And Also Fails To Identify Any Legal Exemptions Which Would Permit It To Pay Plaintiffs Late And Then Nothing At All

In Plaintiffs' first request for production of documents, Plaintiffs broadly demanded that Defendants produce all documents relating to Plaintiffs' jobs, job descriptions, compensation, and the timing of Plaintiffs' receipt of their paychecks. (Rule 56.1 Stmt. ¶40). However, Defendants did not provide any responsive documents whatsoever to Plaintiffs' request for production. (Rule 56.1 Stmt. ¶41).

In Plaintiffs' interrogatories, Plaintiffs asked Defendants to set forth any specific regulations, orders, rulings approvals and/or interpretations that Defendants might rely on to establish an affirmative defense that Defendants that acted in good faith, or in conformity with, wage and hour regulations or law. Defendants, however, did not identify any statutes, regulations, orders, rulings, approvals and/or interpretations. (Rule 56.1 Stmt. ¶42).

Further, in the interrogatories, Defendants were asked to identify any specific legal exclusions or exceptions that they relied upon to assert their affirmative defense that Plaintiffs' claims were barred by exclusions, exceptions, credits or offsets under the FLSA and New York Labor Law. Defendants, however, failed to identify any exclusions, exceptions or offsets whatsoever. (Rule 56.1 Stmt. ¶1).

9

## ARGUMENT

Summary judgment under Rule 56 is appropriate where "the moving party shows there is no genuine issue as to any material fact." Fed. R. Civ. P.56. When the moving party can make such a showing, the "opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles." *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).

Here, summary judgment is the appropriate vehicle to resolve this case. Plaintiffs have not been paid at all for several months of work, and Defendant admits the same. Plaintiffs were paid late every payroll in 2016, and Defendants cannot controvert the same. Summary judgment should be granted.

**I.     There Is No Dispute That Plaintiffs Were Not Paid Their Agreed-Upon Wages (Or Any Wages At All) For Full Time Employment From January 2017 Through March 2017, In Violation of The Fair Labor Standards Act And New York Labor Law**

The Fair Labor Standards Act requires an employer to compensate employees, other than those falling into specific exemptions, for all hours worked, at the prevailing minimum wage. 29 U.S.C. §§ 206, 207. In addition, courts have "long interpreted [the FLSA] to include a prompt payment requirement." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998).

Here, the undisputed facts show Defendants violated the FLSA by depriving Plaintiffs of straight time pay for January, February and March 2017. Plaintiffs' allegations are supported by the deposition testimony of Lorelei's principal Lorraine Totaro, in which she admits that both Plaintiffs worked full-time schedules, but that she never paid them any salary. (Rule 56.1 Stmt., ¶32-35). With respect to these events, Totaro also testified that she prepared contracts for each employee concerning "payment of unreceived payroll," and promised to make the payments,

but never did. (Id.). Thus, Plaintiffs' allegations and the admissions of Defendant Totaro are sufficient to establish that Defendants violated the FLSA's requirements regarding the compensation of employees at the prevailing minimum wage and the prompt and full payment of wages.

In addition, Defendants' undisputed actions also constitute violations under the New York Labor Law because "[t]he NYLL and the FLSA are analytically nearly identical." *Saucedo v. On the Spot Audio Corp.*, 16-CV-451(CBA)(CLP), 2016 U.S. Dist. LEXIS 177680, 2016 WL 8376837, at *6 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 16-CV-451(CBA)(CLP), 2017 U.S. Dist. LEXIS 28089, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL is the "state analogue" to the FLSA).

Above all, the NYLL requires that covered employees are paid "in accordance with the agreed terms of employment." *Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (citing NYLL § 191(1)(d) (discussing these provisions of the FLSA and NYLL as similar); *see also* NYLL § 191(1)(a), (c) (also imposing this requirement).

Here, Defendants violated the NYLL by depriving Plaintiffs of their agreed-upon pay of an annualized rate of $85,000, and forcing them to work on accounts while paying them nothing whatsoever. These undisputed allegations establish violations of the NYLL's requirements of prompt and full payment of wages. The NYLL provides "the right to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing" of an action. N.Y. Lab. Law § 198 (McKinney's). "[C]ourts have awarded straight time rates higher than the minimum wage where the parties agreed to the rate." *Villar v. Prana Hosp., Inc.*, 14-CV- 8211(RA)(JCF), 2017 U.S. Dist. LEXIS 54962, 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017).

Here, there is no dispute that Plaintiffs and Defendants agreed to a rate of $85,000 per year. (Rule 56.1 Stmt., ¶10). Defendants failed to pay Plaintiffs' regular wages for a three-month period in early 2017, and Defendant readily admits the same. (Rule 56.1 Stmt., ¶32). Accordingly, Plaintiffs are entitled to a judgment for the time they worked at their regular hourly rates. *See Hernandez v. NJK Contractors, Inc.*, 09-CV-4812(RER), 2015 U.S. Dist. LEXIS 57568, 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) (applying plaintiffs' regular rate).

As courts have noted, the aforementioned statutory construction of requiring payment of the agreed-upon rate, rather than only minimum wage, gives fuller effect to the remedial purposes of NYLL, which, at § 198(1-a) expressly provides that "any employee paid *less than the wage to which he or she is entitled under the provisions of this article*" is entitled to recover his or her "full wages" (emphasis added), and NYLL § 663 does not prohibit an award based on an employee's agreed-upon wages. *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609, at *29-30 (E.D.N.Y. Mar. 29, 2018). This means that an employee has a cause of action to recover the full amount of unpaid wages that he or she is entitled to under NYLL § 198, in addition to seeking payment minimum wages under NYLL § 663. (Id.).

Accordingly, based on the undisputed and indisputable facts here, Plaintiffs are entitled to summary judgment for their unpaid wages at their agreed-upon rates, plus statutory damages under FLSA and NYLL of interest, liquidated damages, attorney's fees and costs.

## II.     There Can Be No Dispute That Plaintiffs Were Paid Untimely All Throughout 2017, In Violation of Fair Labor Standards Act And New York Labor Law

Plaintiffs seek liquidated damages for 26 delayed wage payments in the year 2016 under the prompt payment requirement of the FLSA and the NYLL. As it cannot be disputed that,

because these monies were paid late, Plaintiffs' request for summary judgment on this ground should also be granted.

Under the law, a separate right to liquidated damages exists that "is not conditioned on default at the time suit is begun." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 711, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). "[C]ourts have long interpreted the [FLSA] to include a prompt payment requirement." *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir. 1998). The FLSA requires that minimum wages for the hours worked be paid when they become due. *Id.* at 55-56. Employees whose wages are not timely paid are entitled to statutory damages, despite the fact that the employees received their full wages prior to instituting their lawsuit. *See Humphrey v. RAV Investigative & Sec. Servs. Ltd.*, 12-CV-3581(NRB), 2016 U.S. Dist. LEXIS 177572, 2016 WL 7190073, at *6 (S.D.N.Y. Nov. 29, 2016) ("the remedy for untimely wages is limited to liquidated damages"). Under the FLSA, Plaintiffs are entitled to liquidated damages equal to 100% of the wages for the untimely payments. 29 U.S.C. § 216(b).

Similarly, the First Department of the New York State Appellate Division has held that, under Section 198 of the New York State Labor Law, late-paid wages are subject to mandatory liquidated damages even where the monies were ultimately received prior to the lawsuit. *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (App. Div. 1st Dept.). So too here.

Here, there is no dispute that, in 2016, Plaintiffs' wages were paid late each and every pay cycle (24 pay cycles) (R. 56.1 Stmt., ¶19). Accordingly, Plaintiffs are entitled to summary judgment granting them liquidated damages, attorney's fees and cost with respect to the untimely payments.

**III.    Lorraine Totaro, As The Sole Owner and Day-To-Day Manager Of Lorelei Events Group, Is Clearly An "Employer" Under FLSA New York Labor law And Is Jointly And Severally Liable For Its Wage and Hour Violations**

To determine who qualifies as an "employer" for purposes of individual liability, the Second Circuit looks to the factors enumerated in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984), which are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 12. Satisfaction of these factors is sufficient, but not necessary, to establish an employer-employee relationship. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 (2d Cir. 2003).

Here, there is no question that Lorraine Totaro is Plaintiffs' statutory "employer" because she satisfies all of the *Carter* factors. Totaro admitted that, during the relevant period, she served as the sole owner and principal of Lorelei. (R. 56.1 Stmt., ¶2). Totaro testified that that she was the individual that hired both Plaintiffs (R. 56.1 Stmt., ¶4) and that, for all relevant times, she was their direct supervisor and boss. (R. 56.1 Stmt., ¶6). Finally, Totaro admitted that she was the one who directed the company's third-party payroll company to delay payments to the Plaintiffs, and, ultimately, she was the one that decided to pay them nothing at all despite the fact that they were working full time. (R. 56.1 Stmt., ¶¶ 16, 23). For these reasons, Totaro qualifies as Plaintiffs' employer under the FLSA.

The NYLL similarly defines "employer" to include "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 373 (E.D.N.Y. 2013) (citing NYLL §§ 190(3), 651(6)) (quotation marks omitted). The NYLL and FLSA definitions are nearly identical, and, as a result, "[d]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA," *id.* (quotation marks and citation omitted), and have "regularly applied the same factors and tests to determine whether entities are

joint employers under the NYLL," *id.* at 375. Thus, for the same reasons discussed with respect to the FLSA, Totaro qualifies under the NYLL as Plaintiffs' "employer."

### IV.    There Can Be No Dispute That Lorelei Violated NYLL By Failing To Provide Wages Statements

The NYLL provides that the employer shall furnish each employee with wage statements for every pay period. N.Y. Lab. Law § 195(3) (McKinney's). "If any employee is not provided a statement or statements as required by" § 195(3), "he or she shall recover in a civil action damages of one hundred dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars." N.Y. Lab. Law § 198 (McKinney's).

Here, Plaintiffs were provided no wage statements at all throughout 2016 when they were being habitually paid late. (R. 56.1 Stmt., ¶20). Further, during January, February and March 2017, Plaintiffs were being provided no wage statements for the time when they were working but not being paid at all. Accordingly, Defendants violated N.Y. Lab. Law § 195(3) and owe the commensurate statutory damages.

### V.    There Can Be No Dispute That Lorelei And Totaro Were Unjustly Enriched By Their Actions of Stiffing Plaintiffs on Their Wages While Plaintiffs Worked To Fulfill Event Planning Contracts For Lorelei

As noted repeatedly, both Plaintiffs were working full-time for Defendants in January, February and March, 2017 on various projects, but received no wages whatsoever as Lorelei continued to collect on the contracts for the events which Plaintiffs were planning. As a result, Defendants were unjustly enriched.

"To prevail on a claim of unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require restitution." *Bongat v. Fairview Nursing Care*

*Ctr., Inc.*, 341 F. Supp. 2d 181, 188 (E.D.N.Y. 2004) (citing *Golden Pac. Bancorp v. FDIC*, 273

F.3d 509, 519 (2d Cir. 2001) (applying New York law)).

Here, both Plaintiffs had an agreed-upon salary of $85,000. (R. 56.1 Stmt., ¶10). In

January, February and March 2017, Plaintiffs were actively employed by Defendants, however,

Defendants paid them no wages at all. (R. 56.1 Stmt., ¶¶21-26). During, and after this time,

Plaintiffs job duties remain unchanged from when they had been receiving compensation (R. 56.1

Stmt., ¶30), and both employees continued working on projects for the benefit of the Defendants,

with Accosta continuing to work on the "City Parks Alliance" fundraiser for which Lorelei was

receiving payments. (R. 56.1 Stmt., ¶21).

Above all, in acknowledging that Plaintiffs were owed money, Lorelei, through its

sole owner and principal Totaro, drafted and tendered "contracts of indebtedness" for "unreceived

payroll" to both Plaintiffs, and acknowledged that Accosta was owed $21,250.02 in unpaid gross

salary, and Rosenstock owed $10,520.76 in net salary. (R. 56.1 Stmt., ¶¶ 31, 33). Although these

"contracts of payroll indebtedness" included a timeline on which Lorelei promised to make the

unpaid wage payments, no such payments were ever made. (R. 56.1 Stmt., ¶34).

Moreover, when Plaintiffs inquired as to what, if anything, to tell Lorelei's clients

about their sudden conversion to "independent contractors," Totaro advised them to keep their

heads low and continue working so that the company could make money:

> The new arrangement is a stricter way of safeguarding YOUR
> salaries…if you thought about the new setup in a creative and open
> way you would see that you could actually earn MORE this way,
> have more control and autonomy…
>
> [i]n regards to "what we tell our clients?" – why is this such a sticking
> point? We have nothing to tell our clients. You are hired by Lorelei,
> you are their account executives. The only changes are internal i.e.
> BOOKKEEPING, and different types of billing (i.e. associates).

Accordingly, Defendants were enriched at Plaintiffs' expense, and the Court should grant Plaintiffs' motion for summary judgment.

### VI. There Is No Dispute That Lorelei Has Failed To Pay Plaintiffs' 401(k) Contributions And Has Failed To Make Contributions Due Under Employee Retirement Income Security Act

Lorelei admits in its "payment of unreceived payroll" agreements, that it owes Frank Accosta $1,487.46 in unremitted 401(k) contributions, and that it owes David Rosenstock $2,125.02 in unremitted 401(k) contributions. (R. 56.1 Stmt., ¶¶ 31, 33). Further, Totaro admits that employer contributions into Lorelei's 401(k) plan are deposited irrespective of whether the employee defers any of his own salary. (R. 56.1 Stmt., ¶11).

Section 502(a)(1)(B) of ERISA authorizes a participant in a 401(k) plan to bring a civil action to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. *Boggs v. Boggs*, 520 U.S. 833 (1997). In an action to compel or recover contributions to a single-employer plan, courts are entitled to provide relief to litigants in the form of the amount of contributions to be made by the employer, prejudgment and post judgment interest. *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999 (3d Cir. 1992)(action to recover benefits under ERISA).

Here, the Court should grant Plaintiffs' motion and order Lorelei to pay the 401(k) amounts due to Plaintiffs, plus the applicable damages.

### CONCLUSION

There are no material facts in dispute. Plaintiffs' respectfully request grant summary judgment in favor of the Plaintiffs as follows:

1. Awarding Plaintiffs actual damages for their unpaid wages, plus an additional, equal amount as liquidated damages, plus pre- and post-judgment interest at the statutory rate, plus attorney's fees, costs and disbursements as provided for FLSA and NYLL;

2.  Awarding Plaintiffs all damages available under the NYMWA and regulations thereto, and the NYLL due to Defendants' failure to pay Plaintiffs' wages or minimum wage;

3.  Awarding Plaintiffs all damages available under the FLSA and regulations thereto, and the NYLL due to Defendants' failure to pay wages when due, including liquidated damages, statutory damages, costs, interest and attorneys' fees;

4.  Awarding Plaintiffs all damages available under the NYLL for Defendants' failure to provide Plaintiffs with proper pay stubs and/or wage statements;

5.  Awarding Plaintiffs all damages available under ERISA for failure of the Employer to make contributions to Defendants' 401(k) Plan under the terms of that Plan;

6.  Awarding Plaintiffs all damages for Defendants' unjust enrichment at their expense;

7.  Awarding Plaintiffs any further legal and equitable relief that the Court deems just, necessary and proper.

Respectfully submitted,

**ROTHMAN ROCCO LaRUFFA, LLP**

/s/ Matthew P. Rocco

_____

Matthew P. Rocco

Dated: January 25, 2021
at Elmsford, New York

18