UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK ACCOSTA and DAVID ROSENSTOCK, individuals,<br><br>       Plaintiffs,<br><br> v.<br><br>LORELEI EVENTS GROUP, INC., and LORRAINE TOTARO, an individual,<br><br>       Defendants. | Civil Action No. 7:17-cv-7804-NSR |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………...3

PRELIMINARY STATEMENT……………………………………………………………………4

FACTUAL BACKGROUND……………………………………………………………………….5

ARGUMENT……………………………………………………………………………………...7

CONCLUSION…………………………………………………………………………………..11

**TABLE OF AUTHORITIES**

**CASES:**

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

Bell v. Pfizer, Inc., 499 F.Supp.2d 404, 410 (S.D.N.Y.2007)

Clougher v. Home Depot U.S.A., Inc., 696 F.Supp.2d 285 (E.D.N.Y. 2010)

D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 416 (E.D.N.Y. 2015)

Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003)

Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir.2001)

In re Kakareko, 575 B.R. 12, 24 (Bankr. E.D.N.Y. 2017)

JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F.Supp.2d 482, 485 (S.D.N.Y. 2004)

Reiseck v. Universal Comms. Of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010)

Watson v. Consol. Edison of New York, 645 F. Supp. 2d 291, 297 (S.D.N.Y. 2009)

Xiotech Corp. v. Express Data Prod. Corp., 11 F. Supp. 3d 225, 236 (N.D.N.Y. 2014)


STATUTES/RULES:

Fed. R. Civ. P. 56

29 U.S.C. § 1002(21)(A)(i)

N.Y. Lab. Law § 651 (McKinney)

Defendants Lorelei Events Group, Inc. ("Lorelei") and Lorraine Totaro ("Totaro") (Lorelei and Totaro collectively "Defendants), hereby submit this memorandum of law in opposition to Plaintiffs' motion for summary judgment. Factual issues remain to be decided by a jury, and therefore summary judgment is inappropriate.

## **PRELMINARY STATEMENT**

This case arises out of the waning years of an event planning business which had served nonprofit organizations for approximately thirty-five years, helping these organizations raise over $300 million. The first seven of Plaintiffs' nine claims are brought under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and/or the New York Minimum Wage Act ("NYMWA"). These laws exempt "administrative employees," which has been defined as if "the employee's 'primary duty consists of ... the performance of office or nonmanual work directly related to management policies or general business operations of his employer," and requires "the exercise of discretion and independent judgment." The facts of this case are such that factual issues remain to be determined as to whether or not the "administrative employee" exemption applies to Plaintiffs, since they were officers of the corporation, set their own schedules, exercised independent judgment in planning and hosting events for their clients, and had discretion in how to best carry out those events.

Both Plaintiffs earned well above the minimum $250 per week required by the exemption. Both were vice presidents of the corporation at least prior to 2017. Both Accosta and Rosenstock testified that they worked as account executives (in Rosenstock's case, both a production manager and account executive), and maintained client relationships as part of their jobs. They coordinated the work of other employees and third-party vendors to ensure that client's events ran smoothly. They often performed these tasks without Defendant Totaro

4

present.  They both exercised a considerable amount of independent judgment and made decisions at events for which they were the account executive.  These facts support a finding that Plaintiffs fall within the "administrative employee" exemption under the FLSA and NYLL, rendering summary judgment inappropriate.

Plaintiff's eighth claim is for breach of fiduciary duty under ERISA.  To make a claim under ERISA, Plaintiffs have to show that Totaro was a "fiduciary."  Plaintiffs have not shown that Totaro was a fiduciary which would potentially give rise to personal liability.  In addition, there has been no showing of a misrepresentation made by Totaro on which Plaintiffs relied to their detriment.

Plaintiff's final claim is for unjust enrichment.  In order to assert a claim against Totaro personally, Plaintiffs would need to show that Totaro was acting in her individual capacity or make a showing that the corporate form was being abused in order to "pierce the corporate veil."  There is no evidence that anything Totaro did was anything other than in in her capacity as president of Lorelei.  Plaintiffs have not shown that Totaro was using the corporate form to perpetuate a fraud or other wrong against them, and therefore have not shown that "piercing the corporate veil" is appropriate.  In addition, neither Lorelei nor Totaro were "enriched" in any way, since Lorelei went out of business and Totaro personally lost $300,000 over this time as a result of personal loans made to Lorelei.

**FACTUAL BACKGROUND**

Defendant Lorraine Totaro was the owner and president of Lorelei Events Group, Inc. ("Lorelei"), during the time period in question.  Deposition of Lorraine Totaro taken April 9, 2018, at 20 ("Totaro Deposition").  Plaintiffs Accosta and Rosenstock worked for Lorelei for a number of years planning fundraising events.  See Accosta Deposition ("Accosta Deposition"),

at 14, Deposition of David Rosenstock taken June 15, 2020 ("Rosenstock Deposition"), at 17, 46. Accosta and Rosenstock both became vice presidents at some point prior to 2016. Accosta Deposition, at 26, Rosenstock Deposition, at 99.

Plaintiff Accosta was hired in July 2007. Deposition of Frank Accosta taken June 15, 2020, p. 14. He became a vice president "in the latter part of [his] employment." Id. at 26. Plaintiff Rosenstock was hired in 2001 and became an account manager that same year. Rosenstock Deposition, pp. 17, 46. He was made a vice president sometime between 2013 and 2015. Id. at 99. Plaintiffs did not have a direct supervisor. Totaro Deposition, p. 19. Both testified that their job involved planning events and Defendant Totaro would not even attend all of these events. Id. at 62, Accosta Deposition, p. 43.

Due to late payments from clients, Lorelei encountered financial difficulties during 2016 leading to insufficient funds available to meet payroll. Totaro Deposition, p. 39. Accosta and Rosenstock were aware that the company was going through financial difficulties. Accosta Deposition, p. 67, Rosenstock Deposition, pp. 86-87.

Totaro took no salary from mid-2015 forward. Totaro declaration ¶3. She loaned Lorelei over $300,000 to help keep Lorelei afloat. Id. at ¶5. Lorelei has not been in operation since 2017 and has no assets. Id. As a result, the loans Totaro made to Lorelei will not be repaid. Id.

Due to this precarious financial situation, Totaro, as president of Lorelei, informed Plaintiffs Accosta and Rosenstock that as of April 1, 2017, they could continue working as contractors for Lorelei but would no longer be considered employees and both Accosta and Rosenstock acknowledged that they knew of the new arrangement. Accosta Deposition, pp. 55-56, Rosenstock Deposition, p. 85, see also April 12, 2017 Memorandum, attached hereto as Exhibit "A." Plaintiff Rosenstock acknowledged that was aware at least second-hand that

Defendant Totaro put her own money into the company to keep it going.  See Rosenstock Deposition, pp. 93-95.

## ARGUMENT

Summary judgment under Rule 56 is only appropriate where "the moving party shows there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56.  The burden is on the moving party to show that there is no genuine factual dispute.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  At this stage, "all reasonable inferences must be drawn in the non-movant's favor."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The first seven of Plaintiffs' nine claims are brought under the FLSA/NYLL.  Both the FLSA and the NYLL include exemptions for individuals working in a "bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1), N.Y. Lab. Law § 651 (McKinney).  The employer must prove these affirmative defenses by a preponderance of the evidence.  See Clougher v. Home Depot U.S.A., Inc., 696 F.Supp.2d 285 (E.D.N.Y. 2010).  Assuming the individual in question earns at least $250 per week, an individual can qualify under the "administrative employee" exemption if "the employee's 'primary duty consists of ... the performance of office or nonmanual work directly related to management policies or general business operations of his employer," and requires "the exercise of discretion and independent judgment."  Reiseck v. Universal Comms. of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010) (internal citations omitted).  In the service industry, the line between "production" and "administrative" work is often unclear.  D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 416 (E.D.N.Y. 2015).  Where evidence is in conflict as to the nature of a given plaintiff's job, summary judgment may be precluded for both parties.  See id. at 417-18.

Here, there is ample evidence to support that Accosta and Rosenstock were administrative employees. At a minimum, issues of fact exist precluding summary judgment. Plaintiff Frank Accosta testified that he started his own event planning in April 2017. Accosta Deposition, p. 8. Notably, the nature of his work in assisting clients to put on their conferences did not change once he started his own firm from his work while working for Lorelei. Id. at 12-13. He started working as an account executive for Lorelei in 2007 and became vice president during the last few years of his work for Lorelei. Id. at 14, 28. When he started, his salary was $60,000 per year and it rose to $85,000 by the time he left in 2017. Id. at 27. He met individually with clients to provide event planning services. Id. at 22-23. One of his duties was to maintain existing clients. Id. at 31-32. He occasionally went out with clients without Lorraine Totaro. Id. at 34. If Mr. Accosta was the account executive assigned to an event, it was his responsibility to ensure everything was done properly, which frequently involved collaborating with others, including Plaintiff David Rosenstock. Id. at 39-40. Some events went forward without Ms. Totaro present, and if a last-minute decision needed to be made, Mr. Accosta would be the one making that decision. Id. at 42-45. He also developed relationships with vendors. Id. at 50. He also had the freedom to work from home and make his own hours. Id. at 52.

Similarly, Plaintiff David Rosenstock testified that he brought clients to Lorelei during his time there and bringing in clients was part of his job. Rosenstock Deposition, pp. 16-17. His salary similarly rose from $55,000 to $85,000 per year, with added incentives for bringing in new business. Id. at 72-73, 20-21. He also worked on some accounts repeatedly, and part of his job was maintaining those clients, and he made efforts to retain clients. Id. at 25-27, 33. He worked as a production manager and account manager and was responsible to ensure that events (which hosted a few hundred to 1,500 guests) ran smoothly. Id. at 49-50. He was given a lot of

responsibility for the events as production manager and would have had to make last-minute adjustments/decisions if needed. Id. at 53, 55. He was responsible for coordinating various individuals, including the caterers and the audio-visual crew. Id. at 56. There were events where Totaro was not present and the account managers such as Plaintiffs Rosenstock and Accosta would have been the person to make necessary decisions at that event. See id. at 62, 65. Mr. Rosenstock developed experience with certain vendors and recommended them to clients for some events. Id. at 70-71. At least one client expressed that they wanted him to be the one working their events at Lorelei and no one else. Id. at 77-78. Mr. Rosenstock was made a vice president in approximately 2013-2015. Id. at 99.

Plaintiffs' eighth claim, which is the first not based on the NYLL or FLSA, was brought under ERISA for breach of fiduciary duty. "'To establish a breach of fiduciary duty based on alleged misrepresentations about coverage under an ERISA plan,' a plaintiff 'must show that (1) Defendants were acting in a fiduciary capacity and that (2) they made a material misrepresentation or omission (3) on which Plaintiff relied to her detriment.'" Watson v. Consol. Edison of New York, 645 F. Supp. 2d 291, 297 (S.D.N.Y. 2009) (quoting Bell v. Pfizer, Inc., 499 F.Supp.2d 404, 410 (S.D.N.Y.2007)). "To constitute an ERISA fiduciary within the meaning of 29 U.S.C. § 1002(21)(A)(i), defendant must have exercised authority or control over the management or disposition of plan assets." In re Kakareko, 575 B.R. 12, 24 (Bankr. E.D.N.Y. 2017). Plaintiffs have not made a showing that Totaro was acting as a fiduciary by managing or disposing of plan assets. She was not administrating Lorelei's retirement plan but was working in the day to day business of the company. Absent such a showing, Plaintiff cannot prove claim number eight and certainly cannot make a showing warranting summary judgment.

Furthermore, there has been no showing of a misrepresentation on which Plaintiffs relied to their detriment and therefore summary judgment is not warranted on this claim.

Plaintiffs' final claim is for unjust enrichment against both Lorelei and Totaro. In order to make a claim against Totaro personally, Plaintiffs are seeking to "pierce the corporate veil," since it is undisputed that they were employed by Lorelei and not Totaro. In order to do that, Plaintiffs must show that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." Xiotech Corp. v. Express Data Prod. Corp., 11 F. Supp. 3d 225, 236 (N.D.N.Y. 2014) (quoting JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 306 F.Supp.2d 482, 485 (S.D.N.Y.2004)). To state a claim for unjust enrichment, a plaintiff must show that "(1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; **and** (3) the circumstances are such that equity and good conscience require restitution." Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir.2001) (applying New York law) (emphasis added). Plaintiffs cannot make a claim against Defendant Totaro because she was always acting in her capacity as president of Lorelei, unless they can make a showing sufficient to "pierce the corporate veil." To do that, they would have to show that Totaro exercised domination over the entity to commit a wrong against them, which they have not done. Even if the court chooses to permit the unjust enrichment claim to proceed, Plaintiffs cannot show unjust enrichment because there was no enrichment of either Lorelei (which has no assets), or Totaro personally (she took no salary during the relevant time period). In addition, Lorraine Totaro poured her own money into Lorelei Events Group, including to pay Plaintiffs' salaries. Totaro Declaration, ¶¶ 3-5. Given there was no

"enrichment," at Plaintiffs' expense or otherwise, for purposes of this motion, summary judgment is not justified in Plaintiffs' favor.

Defendants responded to Plaintiff's Interrogatories with objections, including the responses to Plaintiff's requests for information related to the legal arguments Defendants might make. See Exhibit "B." In the almost three years since those responses have been served in March 2018, Plaintiffs have not taken any action on those responses. Objections were filed to Plaintiffs' Interrogatories and Plaintiffs have not moved to overrule objections or for more specific responses. Exhibit "E." The defenses of the statute of limitations, gross income threshold, and exclusions/exceptions under the FLSA and NYLL were all raised and preserved in Defendants' Answer. Exhibit "F."

## **CONCLUSION**

WHEREFORE, it is clear that issues of fact remain to be decided by a jury relative to the applicability of the "administrative employees" exception to Plaintiffs and other issues, and as a result Defendants respectfully request that Plaintiffs' Motion for Summary Judgment be DENIED.

Dated: New York, New York
February 24, 2021

                LEADER BERKON COLAO
                & SILVERSTEIN, LLP

By:   /s/ Joseph G. Colao
       JOSEPH G. COLAO
       630 Third Avenue, 17th Floor
       New York, New York 10017
       (212) 486-2400
       colao@leaderberkon.com

*Attorney for Defendants,*
*Lorelei Events Group, Inc.*
*and Lorraine Totaro*