UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK ACCOSTA AND DAVID ROSENSTOCK,<br><br>Plaintiff,<br><br>-against-<br><br>LORELEI EVENTS GROUP, INC., AND LORRAINE TOTARO,<br><br>Defendants. | Civil Action No.: 17-7804 (NSR)<br><br>Hon. Nelson S. Roman, U.S.D.J.<br><br>**RULE 56.1 STATEMENT** |

Pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, New York Paving, Inc. ("Defendant" or "NY Paving"), submits that the following material facts are not in dispute.

1. Founded in 1986, Lorelei Events Group, Inc. is a New York State corporation. Lorelei is an event productions company that plans fundraisers, corporate retreats, corporate conferences, and similar events. (Rocco Decl., ¶9).

    **Response: Admitted.**

2. For all times relevant to this action, Lorraine Totaro was the sole owner and principal of Lorelei Events Group, Inc. (Rocco Decl., ¶10).

    **Response: Admitted.**

3. For all times relevant to this action, both Plaintiffs Accosta and Rosenstock were employed a "account executives" with Lorelei. (Rocco Decl., ¶11).

    **Response: Admitted.**

4. Accosta and Rosenstock were both hired directly by Defendant Totaro. (Rocco Decl., ¶12).

**Response: Admitted.**

5. At all relevant times of their employment, Plaintiffs Frank Accosta and Rosenstock were "employees" of Lorelei and their wages were given IRS "W-2" tax form treatment. (Rocco Decl., ¶13).

**Response: Denied. Plaintiffs were employees of Lorelei Events Group until March 31, 2017, when they were offered the opportunity to continue coordinating events as "freelance" independent contractors. (Exhibit "D," pp. 51, 53, 60-61).**

6. For all relevant times of their employment, Totaro was the direct supervisor and boss for Plaintiffs Accosta and Rosenstock, and she alone was responsible for overseeing and monitoring Plaintiffs' work. (Rocco Decl., ¶14).

**Response: Admitted in part. Defendants ran their own events and did so without anyone supervising them. (Exhibit "B," pp. 42-43, Exhibit "C," p. 62).**

7. For all times relevant to this action, Lorelei did not maintain job descriptions for either Accosta or Rosenstock's position. No job descriptions were provided in response to Plaintiffs' request for production of documents. (Rocco Decl., ¶15).

**Response: Admitted.**

8. The job of "account executive," requires only that Accosta and Rosenstock have a high school degree. (Rocco Decl., ¶16).

**Response: Admitted.**

9. The job of an account executive involves planning dinners, conferences, and fundraising events for clients. (Rocco Decl., ¶17).

**Response: Admitted in part. Defendant Totaro testified that this position also involved interacting with clients and running the events. (Exhibit "D," pp. 27-28).**

10. Both Accosta and Rosenstock were full-time employees who worked five (5) days a week, and each earned an annual salary of $85,000. (Rocco Decl., ¶18).

**Response: Admitted.**

11. In addition, both Accosta and Rosenstock participated in Lorelei's 401(k) plan, which provided an employer match of 2% of salary, irrespective of whether an employee deferred his own wages into the plan. (Rocco Decl., ¶19).

**Response: Admitted.**

12. In addition to their salaries, Plaintiffs received a performance incentive equal to ten percent (10%) of the price of the contract they were handling. Performance incentive payments were paid in addition to Plaintiffs' regular salaries (Rocco Decl., ¶20).

**Response: 12. Admitted in part; the incentive was only part of Plaintiffs' pay structure for part of their time with Lorelei. (Exhibit "B," p. 70 and Exhibit "C," p. 73).**

13. All work performed by Accosta and Rosenstock was overseen by Lorraine Totaro, who acted as their direct supervisor. (Rocco Decl., ¶21).

**Response: Admitted in part. Defendants ran their own events and did so without anyone supervising them. (Exhibit "D," p. 11). While Defendant Totaro was their "supervisor" in one sense, no one tracked Plaintiffs' hours and Plaintiffs were trusted to handle their own events (which was the substance of their positions). (Exhibit "B," pp. 42-43, Exhibit "C," p. 62, Exhibit "D," p. 11).**

14. In the years 2015 through 2016, Lorelei maintained two (2) pay periods per month; with regular paydays occurring on the first (1st) and sixteenth (16th) day of every month. (Rocco Decl., ¶22); (Accosta & Decl., ¶5-7).

**Response: Admitted.**

15. For all relevant times prior to January 2016, Plaintiffs have always received regular, bi-monthly salary payments in accordance with the bi-monthly salary schedules set forth above. (Accosta & Rosenstock Decl., ¶9).

**Response: Admitted.**

16. Frequently, throughout the year 2016, Defendant Lorraine Totaro would call Lorelei's payroll vendor, "Paychex," and tell them not to make the regular payroll to Accosta and Rosenstock because the company was low on funds. (Rocco Decl., ¶23).

**Response: Admitted in part and denied in part. Defendant Totaro testified that she told Paychex not to issue payroll because there was insufficient money to pay it. (Exhibit "D," pp. 38-39).**

17. To wit, in 2016, multiple pay periods would come and go without Plaintiffs ever getting paid. (Accosta & Rosenstock Decl., ¶10).

**Response: Admitted insofar as Defendant Totaro testified that she told Paychex not to issue payroll at times because there was insufficient money to pay it. (Exhibit "D," pp. 38-39).**

18. When Accosta confronted Lorelei's owner, boss and direct supervisor Lorraine Totaro about failing to be paid, Totaro said the company had poor cash flow and she promised to "catch up" at a later date when she got more money in. (Accosta & Rosenstock Decl., ¶11).

**Response: Admitted insofar as Defendant Totaro testified that at times the business could not issue payroll because clients were paying late. (Exhibit "D," p. 39).**

19. In the year 2016, Accosta was repeatedly paid late as follows as set forth in the below table, and Rosenstock was also paid late every pay period in the 2016 year period:

| Pay Period | Amount | Check Due Date | Date Actually Paid |
|---|---|---|---|
| 1/16/16 to 1/31/16 | $3,541.66 | February 1, 2016 | April 19, 2016 |
| 2/1/16 to 2/15/16 | $3,783.34 | February 16, 2016 | April 27, 2016 |

4

| | | | |
|---|---|---|---|
| 2/16/16 to 2/29/16 | $3,541.66 | March 1, 2016 | May 5, 2016 |
| 3/1/16 to 3/15/16 | $3,541.67 | March 16, 2016 | August 10, 2016 |
| 3/16/16 to 3/31/16 | $3,541.66 | April 1, 2016 | September 15, 2016 |
| 4/1/16 to 4/15/16 | $3,541.66 | April 16, 2016 | September 15, 2016 |
| 4/16/16 to 4/30/16 | $3,541.67 | May 1, 2016 | September 15, 2016 |
| 5/1/16 to 5/15/16 | $3,541.66 | May 16, 2016 | September 15, 2016 |
| 5/16/16 to 5/31/16 | $3,541.66 | June 1, 2016 | June 16, 2016 |
| 6/1/16 to 6/15/16 | $3,541.67 | June 16, 2016 | September 15, 2016 |
| 8/1/16 to 8/15/16 | $3,541.66 | August 16, 2016 | September 6, 2016 |
| 8/16/16 to 8/31/16 | $3,651.66 | September 1, 2016 | September 12, 2016 |
| 9/1/16 to 9/15/16 | $3,541.66 | September 16, 2016 | September 28, 2016 |
| 9/16/16 to 9/30/16 | $3,541.66 | October 1, 2016 | October 14, 2016 |
| 10/1/16 to 10/15/16 | $3,651.67 | October 16, 2016 | November 11, 2016 |
| 10/16/16 to 10/31/16 | $3,541.67 | November 1, 2016 | November 23, 2016 |
| 11/1/16 to 11/15/16 | $3,541.67 | November 16, 2016 | December 12, 2016 |
| 11/16/16 to 11/30/16 | $3,541.67 | December 1, 2016 | December 15, 2016 |
| 12/1/16 to 12/15/16 | $3,541.67 | December 16, 2016 | January 23, 2017 |
| 12/1/16 to 12/31/16 | $3,541.67 | January 1, 2017 | March 7, 2017 |

**Total Late Pays:**          *$71,294.97*

(Accosta & Rosenstock Decl., ¶12).

**Response: Admitted insofar as Defendant Totaro testified that at times the business could not issue payroll because clients were paying late.  (Exhibit "D," p. 39).**

20.     During the dates referenced in the paragraph above, Lorelei would pay Plaintiffs with a check from the general ledger, and not provide them with wage statements or pay stubs. (Accosta & Rosenstock Decl., ¶13).

**Response: Defendant Totaro testified that she did not recall whether or not this occurred.  (Exhibit "D," p. 51).**

21.     In January, February and March 2017 Frank Accosta was an active employee of the Lorelei assisting in organizing the City Parks Conference in Minneapolis, Minnesota. (Rocco Decl., ¶24).

5

**Response: Admitted in part. Defendants ran their own events and did so without anyone supervising them. (Exhibit "B," pp. 42-43, Exhibit "C," p. 62, Exhibit "D," p. 11).**

22. Despite the fact that Accosta was an active employee working on the City Parks Conference, Defendants failed to pay his salary in January, February or March 2017. (Rocco Decl., ¶25).

**Response: Admitted in part. Accosta was employed by Lorelei and Lorelei failed to pay him. (Exhibit "B," p. 14).**

23. The decision not to pay Accosta for January, February and March 2017 was made directly by Lorraine Totaro herself. (Rocco Decl., ¶26).

**Response: Denied. There was no "decision" not to pay Accosta and Rosenstock; there was no money in the company to pay them. (Exhibit "D," pp. 39, 73).**

24. David Rosenstock was an employee of Lorelei in January, February and March 2017. (Rocco Decl., ¶27).

**Response: Admitted.**

25. During January, February and March of 2017, Rosenstock was working in the office only. (Rocco Decl., ¶28).

**Response: Admitted.**

26. However, in January, February and March 2017, Lorelei stopped paying Rosenstock entirely. (Rocco Decl., ¶29).

**Response: Admitted.**

27. The decision not to pay Rosenstock for January, February and March 2017 was made directly by Lorraine Totaro herself. (Rocco Decl., ¶30).

6

**Response: Denied. There was no "decision" not to pay Rosenstock; there was no money in the company to pay him. (Exhibit "D," pp. 51).**

28. In April, 2017, Defendant Totaro made the decision to re-classify Accosta and Rosenstock as "independent contractors," rather than employees. (Rocco Decl., ¶31).

**Response: Admitted insofar as Totaro, in her capacity with Lorelei, changed the relationship of Accosta and Rosenstock to independent contractors, offering them continued work as contractors and changing their pay structure. (Exhibit "D," pp. 51, 53, 60-61).**

29. Totaro converted Accosta and Rosenstock to "independent contractors" solely because Lorelei sought to escape paying payroll taxes on behalf of these employees. (Rocco Decl., ¶32).

**Response: Denied. Totaro, in her capacity with Lorelei, changed the relationship of Accosta and Rosenstock to independent contractors in order to save Lorelei the expense of taxes, and as part of that conversion the compensation structure changed to a fee plus incentives. (Exhibit "D," pp. 53, 55.)**

30. Although Plaintiffs were converted from "employees" to "independent contractors," their job duties or responsibilities did not change in any way. (Rocco Decl., ¶33).

**Response: Denied. Plaintiff Accosta formed his own event planning LLC, Poplar Events, in April 2017. (Exhibit "B," at 8). Plaintiff Rosenstock acknowledged that he was aware that his relationship with Lorelei was changing after March 31, 2017, and considered whether or not he wanted to continue working as a "freelancer" for Lorelei. (Exhibit "C," at 88).**

31. In April 2017, Lorraine Totaro drafted a Memorandum to the Plaintiff Accosta, whereby Totaro acknowledged that Lorelei had not paid Accosta his wages for the months of

7

January, February and March 2017, and promised to repay him in the future for his wages and 401(k) contributions. (Rocco Decl., ¶34).

---

**LORELEI EVENTS GROUP**
708 THIRD AVENUE
NEW YORK, NEW YORK 10017

Date: April 7, 2017

Re: LETTER OF AGREEMENT BETWEEN LORELEI EVENTS GROUP and FRANK ACCOSTA

Subject: PAYMENT OF UNRECEIVED PAYROLL

---

This Agreement is between Lorelei Events Group and Frank Accosta who has provided services to Lorelei as an Account Executive.

It is agreed that Lorelei Events Group, at the time of this agreement, is indebted to Frank Accosta the equivalent of six semi-monthly payroll periods covering January 1, 2017 through March 31, 2017 while an employee of Lorelei Events Group:

Gross Salary: $21,250.02
401K: $ 1,487.46

Lorelei Events Group agrees to pay Frank Accosta its indebtedness to him as an employee under the arrangements and obligations that existed during this period as an employee according to the schedule set below. Lorelei Events Group agrees to pay Frank Accosta the gross amount (per pay period times six) stated above less the withholding of applicable federal, state and local taxes (Social Security, Medicare, Federal Income Tax, NY State Income tax, NY Disability tax); the Lorelei Events Group 2% contribution to the plan administered retirement fund and the employee 5% contribution to the plan administered retirement fund.

Salary payments to Frank Accosta will be made through Paychex; Paychex will make the required deductions and provide net salary check with documentation for all withholdings. In good faith, Lorelei Events Group will process payment to Frank Accosta as follows:

Eight monthly payments of $2,656.27 (salary) and $186.00 (401K) beginning May 1, 2017 through and including December 1, 2017

IN WITNESS WHEREOF, Frank Accosta and Lorelei Events Group, Inc. have executed this Agreement as of the date first set forth above.

BY: _[signature]_
FRANK J. ACCOSTA

BY: _[signature]_
LORRAINE TOTARO
FOUNDER, LORELEI EVENTS GROUP, INC.

DATE: 4/14/17

DATE: 4/17/17

---

**Response: Admitted insofar as the cited document speaks for itself and Totaro acknowledged the debt on behalf of Lorelei.**

8

32. Totaro admits that none of the monies that she promised to pay Accosta in her signed agreement were ever paid, despite the contract acknowledging that Lorelei had not paid him at all in 2017 and owed him three (3) months of back wages and benefits. (Rocco Decl., ¶35).

**Response: Admitted insofar Totaro acknowledged the debt on behalf of Lorelei has not been paid.**

33. In April 2017, Lorraine Totaro drafted a Memorandum to the Plaintiff Rosenstock whereby Totaro acknowledged that Lorelei had not paid Roenstock his wages for the months of January, February and March 2017, and promised to repay him in the future. (Rocco Decl., ¶36).

9

LORELEI EVENTS GROUP
708 THIRD AVENUE
NEW YORK, NEW YORK 10017

Date: April 7, 2017

Re: LETTER OF AGREEMENT BETWEEN LORELEI EVENTS GROUP
And DAVID ROSENSTOCK

Subject: **PAYMENT OF UNRECEIVED PAYROLL**

This Agreement is between Lorelei Events Group and David Rosenstock who has provided services to Lorelei as an Account Executive.

It is agreed that Lorelei Events Group, at the time of this agreement, is indebted to David Rosenstock the equivalent of six semi-monthly payroll periods covering January 1, 2017 through March 31, 2017 while an employee of Lorelei Events Group.
The gross pay for each period is $3,541.67.

| | |
|---|---|
| The total net pay due is | $10,520.76 |
| The total taxes due is | $ 4,279.68 |
| The total 401K due is | $ 2,125.02 |

Lorelei Events Group agrees to pay David Rosenstock their indebtedness to him as an employee under the arrangements and obligations that existed during this period as an employee according to the schedule set below. Lorelei Events Group agrees to pay David Rosenstock the gross amount (per pay period times six) stated above less the withholding of applicable federal, state and local taxes (Social Security, Medicare, Federal Income Tax, NY State Income tax, NY Disability tax); the Lorelei Events Group 2% contribution to the plan administered retirement fund and the employee 5% contribution to the plan administered retirement fund. The remaining portion constitutes the net payment to David Rosenstock and this indebtedness is to be paid as follows:

Beginning May 1, 2017 through and Including December 1, 2017,
Eight monthly payments of $1,753.46(salary) & $713.28 (withholding) & $354.17(401K)
$720.75 (Health & Dental Insurance)

Lorelei Events Group agrees to provide documentation for these withholdings and calculations for each pay period as stated above.

IN WITNESS WHEREOF, David Rosenstock and Lorelei Events Group, Inc. have executed this Agreement as of the date first set forth above.

BY: _/s/ David Rosenstock_
DAVID ROSENSTOCK

BY: _____
LORRAINE TOTARO
FOUNDER, LORELEI EVENTS GROUP, INC.

DATE: 4/18/17

DATE: _____

**Response: Denied as stated. The cited document speaks for itself and Defendant Totaro never executed this document. (Exhibit "D," at 58).**

10

34. Totaro admits that none of the monies listed in the memorandum were ever paid to Rosenstock. (Rocco Decl., ¶37).

**Response: Admitted insofar as the debt Totaro acknowledged the debt on behalf of Lorelei has not been paid.**

35. On or around April 2017, Lorraine Totaro stated that she was "converting" Plaintiffs from employees independent contractors as part of her plan to reduce costs by shifting the federal withholding tax burden to Plaintiffs. As part of that "conversion," Lorelei also cut Accosta's salary in half. (Accosta Decl., ¶14).

**Response: Denied.  Totaro decided to convert the relationship of Accosta and Rosenstock to independent contractors in order to save Lorelei the expense of taxes, and as part of that conversion the compensation structure changed to a fee plus incentives.  (Exhibit "D," pp. 53, 55.)**

36. On April 12, 2017, Plaintiffs received an e-mail memorandum from Lorelei's owner, Defendant Lorraine Totaro. (Accosta & Rosenstock Decl., ¶15).

**Response: Defendants have no knowledge of when Plaintiffs received the email memorandum.**

37. The memorandum commented on Totaro switching us from "W-2" to "Form 1099" workers, and characterized the "new arrangement" as a "stricter way of safeguarding YOUR salaries…if you thought about the new setup in a creative and open way you would see that you could actually earn MORE this way, have more control and autonomy….[i]n regards to "what we tell our clients?" – why is this such a sticking point? We have nothing to tell our clients. You are hired by Lorelei, you are their account executives. The only changes are internal i.e. BOOKKEEPING, and different types of billing (i.e. associates)." (Accosta & Rosenstock Decl., ¶16).

11

**Response: The document speaks for itself.**

38. On May 9, 2017, I received an additional memorandum from Lorelei's owner, Defendant Lorraine Totaro. (Accosta & Rosenstock Decl., ¶17).

**Response: Defendants can neither admit nor deny since it is unknown who "I" is.**

39. The May 9, 2017 memo advised that Totaro was writing us "to alert you to a very pressing issue that undermines any hope of stabilizing Lorelei….Because projected client contracts have not been signed (ACF) and probably won't be signed (SRM and BH), there is no potential income to meet the payment schedules that we negotiated with you in good faith." The memorandum further goes on to detail Lorelei's plans for making payroll and paying Plaintiffs back pay based on client commitments that Lorraine Totaro had secured through December 30, 2017. (Accosta & Rosenstock Decl., ¶18).

**Response: The document speaks for itself.**

40. In Plaintiffs' first request for production of documents, Plaintiffs broadly demanded that Defendants produce all documents relating to Plaintiffs' jobs, job descriptions, compensation, and the timing of Plaintiffs' receipt of their paychecks. (Rocco Decl., ¶38).

**Response: The document speaks for itself.**

41. However, Defendants did not provide any responsive documents whatsoever to Plaintiffs' request for production. (Rocco Decl., ¶39).

**Response: Denied.  Objections were filed to Plaintiffs' discovery requests and Plaintiffs have not moved to overrule objections or for more specific responses.  The defenses of the statute of limitations, gross income threshold, and exclusions/exceptions under the FLSA and NYLL were all raised in Defendants' Answer.**

42. In Plaintiffs' interrogatories, Plaintiffs asked Defendants to set forth any specific regulations, orders, rulings approvals and/or interpretations that Defendants might rely on to establish an affirmative defense that Defendants that acted in good faith, or in conformity with, wage and hour regulations or law. Defendants, however, did not identify any statutes, regulations, orders, rulings, approvals and/or interpretations. (Rocco Decl., ¶40).

**Response: Denied.  The interrogatory was objected to.  The defenses of the statute of limitations, gross income threshold, and exclusions/exceptions under the FLSA and NYLL were all raised in Defendants' Answer.**

43. Further, in the interrogatories, Defendants were asked to identify any specific legal exclusions or exceptions that they relied upon to assert their affirmative defense that Plaintiffs' claims were barred by exclusions, exceptions, credits or offsets under the FLSA and New York Labor Law. Defendants, however, failed to identify any exclusions, exceptions or offsets whatsoever. (Rocco Decl., ¶41).

**Response: Denied.  The interrogatory was objected to.  The defenses of the statute of limitations, gross income threshold, and exclusions/exceptions under the FLSA and NYLL were all raised in Defendants' Answer.**

Dated: February 24, 2021
       New York, New York

                                                      LEADER BERKON COLAO
                                                      & SILVERSTEIN, LLP

By:   /s/ Joseph G. Colao
        JOSEPH G. COLAO
        630 Third Avenue, 17th Floor
        New York, New York 10017
        (212) 486-2400
        colao@leaderberkon.com

        *Attorney for Defendants,*
        *Lorelei Events Group, Inc.*
        *and Lorraine Totaro*