UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANK ACCOSTA and DAVID ROSENSTOCK,

                      Plaintiffs,

  -against-

LORELEI EVENTS GROUP INC. and LORRAINE TOTARO,

                      Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/21/2022

No. 17-cv-07804 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Frank Accosta and David Rosenstock ("Plaintiffs") bring this action against Defendants Lorelei Events Group, Inc. ("Lorelei") and Lorraine Totaro (collectively, "Defendants"), for violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Employee Retirement Income Security Act ("ERISA"), and a common law claim for unjust enrichment. Before this court is Plaintiffs' motion for summary judgment. (ECF No. 91.) For the foregoing reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the record and the parties' Rule 56.1 statements. They are not in dispute unless otherwise noted.

Lorelei is a New York event productions company solely owned by Lorraine Totaro. (Rule 56.1 Statement ("56.1") ECF No. 103, ¶¶ 1-2.) Plaintiffs were hired by Totaro and employed by Lorelei as account executives, with Totaro acting as their direct supervisor and boss. (*Id*. ¶¶ 3-4; 6.) Account executives were involved in planning dinners, conferences, and fundraising events for Lorelei's clients. (*Id*. ¶ 9.) Plaintiffs were full-time employees who worked five days a week

and earned an annual salary of $85,000. (*Id*. ¶ 10.) Plaintiffs also had 401(k) plans, and Lorelei provided an employer match of 2%. (*Id*. ¶ 11.) Plaintiffs also received performance incentives equal to 10% of the price of their contracts. (*Id*. ¶ 12.)

In 2015 and 2016, Lorelei maintained two pay periods per month, with regular paydays on the first and sixteenth day of each month. (*Id*. ¶ 14.) Prior to January 2016, Plaintiffs received their regular, bi-monthly salary payments in accordance with the salary schedule. (*Id*. ¶ 15.) However, throughout 2016, Totaro would, at times, call Lorelei's payroll vendor, Paychex, and tell them not to issue payroll to Plaintiffs as Lorelei had insufficient funds. (*Id*. ¶ 16.) For Accosta specifically, twenty of his payments were made late, ranging from a few days to a few months, and resulting in a total of $71,294.97 of his salary paid late. (*Id*. ¶ 19.)

From January through March of 2017, Accosta assisted in organizing the City Parks Conference in Minneapolis, Minnesota. (*Id*. ¶ 21.) Accosta was not paid for his work during this time. (*Id*. ¶¶ 22; 31-32.) During this same time period, Rosenstock was an employee of Lorelei working in the office only. (*Id*. ¶¶ 24-25.) Rosenstock was also not paid during this time. (*Id*. ¶¶ 26; 33-34.)

On April 7, 2017, Totaro drafted agreements on behalf of Lorelei with both Plaintiffs. The agreement with Accosta states that Lorelei is indebted to him and owes $21,250.02 in gross salary and $1,487.46 in 401(k) contributions. (*Id*. ¶ 31; Declaration of Matthew P. Rocco, Esq., in Support of Plaintiffs' Motion for Summary Judgment ("Rocco Decl.") ECF No. 92, Ex. C.) Lorelei agreed to pay Accosta in eight monthly payments from May 2017 through December 2017. (*Id*.) The agreement with Rosenstock is not signed by Totaro, but it states that Lorelei is indebted to him and owes $10,520.76 in net pay, $4,279.68 in taxes, and $2,125.02 in 401(k) contributions. (56.1 ¶ 33; Rocco Decl. Ex. D.) The agreement states Lorelei would pay Rosenstock in eight

monthly payments from May 2017 to December 2017. (*Id*.) None of the monies promised in these agreements were ever paid to Plaintiffs. (56.1 ¶¶ 32; 34.)

In April of 2017, Totaro changed Plaintiffs' roles from employees to independent contractors. (56.1 ¶¶ 28; 35.) On April 12, 2017, Totaro sent a message to Plaintiffs to "clarify her intentions." (*Id*. ¶¶ 36-37; Declaration of Frank Accosta in Support of Plaintiffs' Motion for Summary Judgment ("Accosta Decl.") ECF No. 93, at Ex. A.) It states that Lorelei was "accumulating more and more payroll indebtedness without the means to pay" and the new arrangement would allow Lorelei to "pay [Plaintiffs] based on income that [it has] and NOT on income [it hopes] to have." (*Id*.) The message further states that Plaintiffs would continue to be Lorelei's account executives, and the only changes are internal, including bookkeeping and billing. (*Id*.)

On May 9, 2017, Totaro sent an email to Plaintiffs and others regarding Lorelei's status. (56.1 ¶¶ 38-39; Accosta Decl. Ex. B.) She stated that projected client contracts had not been signed and probably would not be signed, so there was no potential income to keep up with the payment schedules that were negotiated. (*Id*.)

Plaintiffs filed suit on October 11, 2017. (ECF No. 1.) Discovery was complete on June 16, 2020, and the Plaintiffs sought leave to file a motion for summary judgment which was filed on March 11, 2021. (ECF No. 91.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents,

affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013).  Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not [] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility.  *Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id*. at 250.

A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Plaintiffs aver that there is no dispute that (i) they were not paid any wages from January 2017 through March 2017 in violation of the FLSA and NYLL; (ii) they were untimely paid throughout 2016 in violation of the FLSA and NYLL; (iii) Lorelei failed to provide wage statements in violation of the NYLL; (iv) Lorelei and Totaro were unjustly enriched by not providing Plaintiffs their wages; and (v) Lorelei failed to pay their 401(k) contributions and contributions due under ERISA.

### I. FLSA/NYLL

To state a claim under the FLSA, a plaintiff must first show that: "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Pelgrift v. 335 W. 41st Tavern Inc.*, No. 14-CV-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (citation omitted). NYLL standards are analogous, except that the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales." *Gomez v. El Rancho de Andres Carne de Tres Inc.*, No. 12-CV-1264 (CBA)(MDG), 2014 WL 1310296, at *5 (E.D.N.Y. Mar. 11, 2014) (quoting *Chun Jie Yin v. Kim*, No. 07-CV-1236 (DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008)). Here, Defendants only argue that Plaintiffs' claims fail under prong three.[1]

---

[1] Plaintiffs argue in their memorandum that Totaro, as the sole owner and day-to-day manager of Lorelei, is an employer under the FLSA. (Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Mem.") ECF No. 95, at 13-15.) Defendants fail to address this argument in their opposition. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."

Defendants aver that Plaintiffs fall under the administrative employee exception. (Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Opp.") ECF No. 99, at 7.)  Under the administrative employee exemption, the FLSA and NYLL minimum wage requirements are inapplicable to individuals employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); N.Y. Lab. Law § 651(5).  This includes employees "(1) who earn a salary of at least $684 per week; (2) '[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'; and (3) '[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Suarez v. Big Apple Car, Inc.*, 806 F. App'x 19, 21 (2d Cir. 2020) (citing 29 C.F.R. § 541.200(a)).  For the NYLL, the employee must also "(4) 'regularly and directly assist[] an employer, or an employee employed in a bona fide executive or administrative capacity' or 'perform[], under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge.'" *Id.* at 21–22 (citing 12 N.Y.C.R.R. § 142-2.14(c)(4)(ii)(c)).

---

29 U.S.C. § 203(d).  The NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015).  To determine whether an individual defendant is an employer under the FLSA and NYLL, courts must apply the Second Circuit's four-factor test to determine the "economic reality" of the employment relationship, which considers whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  Here, the undisputed record reflects that Totaro (i) served as the sole owner and principal of Lorelei (56.1 ¶ 2); (ii) hired both Plaintiffs (*id.* ¶ 4); (iii) was the supervisor and boss of both Plaintiffs (*id.* ¶ 6); and (iv) managed the payment of Plaintiffs (*id.* ¶ 16).  This is sufficient to satisfy the *Carter* test.  *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 140 (2d Cir. 1999) (holding the individual was an "employer" under the FLSA where "[e]vidence in the record support[ed] at least three of the four [*Carter*] factors"); *Kantor v. Air Atl. Med., P.C.*, No. 19-cv-03597 (EK) (ST), 2021 WL 3888067, at *3 (E.D.N.Y. July 7, 2021) (finding an individual was an employer where he hired the plaintiff, had supervisory authority over him, determined his wages, established his schedule and rate of pay, and maintained schedules for the employees).  Accordingly, Totaro is Plaintiffs' employer under the FLSA and NYLL.

Here, Defendants' argument fails. It is not in dispute that both Plaintiffs were not paid in 2017, and therefore they were not compensated at a rate of at least $684 per week. Further, Plaintiffs' primary duties were not related to the management or general business operations of Lorelei. For this element, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Plaintiffs' work for Lorelei and Totaro consisted of planning and running events for their clients, which is clearly not the kind of work that falls within the exception. *See Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 540 (S.D.N.Y. 2012) (holding the administrative employee exception did not apply where the employee conducted work that was "the very product or service that [the defendant] offer[ed] to the public" and "the service for which [the defendant] was hired"). Therefore, the administrative employee exception does not apply.

As no exception applies, the Court will now examine the Plaintiffs' claims under the FLSA and NYLL. Plaintiffs aver that there is no dispute that they were (1) not paid any wages during 2017; (2) not paid promptly throughout 2016; and (3) not provided wage statements. The Court will examine each in turn.

    a. *Lack of Payment*

Plaintiffs aver that they were not paid their agreed-upon salary for their work in January, February, and March of 2017. (Compl. ¶¶ 43, 48-50; Mem. at 10-12.) Both the FLSA and the NYLL require employers to pay their employees the statutory minimum wage. 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). Under both statutes, an employee bringing an action for unpaid minimum wages "has the burden of proving that he performed work for which he was not properly

compensated." *Fermin*, 93 F. Supp. 3d at 41–42 (quoting *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)).

Here, it is not in dispute that Plaintiffs were not paid at all for their work in 2017. Plaintiffs have proffered Totaro's testimony where she admits that they were not paid for their work in 2017 (Rocco Decl. Ex. B at 37:8-104), as well as the April 2017 agreements between Lorelei and both Plaintiffs that include admissions that Lorelei owes them payment for January through March of 2017 (*Id.* Ex. C & Ex. D). Therefore, there is no dispute of material fact in regard to this claim.

    b. *Prompt Payment*

Plaintiffs next aver that they are entitled to liquidated damages due to Defendants' late payments provided in 2016. (Compl. ¶ 55; Mem. at 12-13.) "Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement." *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998). While "the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees," several courts have held that "two weeks is an unreasonable amount of time for an employer to delay a paycheck." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018). However, "[t]he NYLL does not appear to provide a similar remedy." *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 360 n.22 (S.D.N.Y. 2014). Instead, the statute's liquidated damages provision "is geared to afford relief for unpaid wages, not for late-paid wages." *Id*.

Here, Plaintiffs have demonstrated that throughout 2016 they were not provided prompt payment. Defendants do not dispute that Totaro would call Paychex and tell them not to issue the payroll to Plaintiffs, and that Plaintiffs would regularly be paid late. (56.1 ¶¶ 16-19.) Defendants

also do not dispute that Accosta was paid late for 20 pay periods, 17 of which include delays for over two weeks. (*Id.* ¶ 19.) Therefore, there is no dispute of material fact for Accosta's claim.

While Defendants also do not dispute that Rosenstock was paid late for every pay period in 2016, (*Id.* ¶ 19), Plaintiffs have failed to provide evidence to show these payments were made after the two-week deadline. Therefore, there are material facts left unresolved for Rosenstock's claim.

   c. *Wage Statements*

Plaintiffs also aver that they were not provided wage statements in violation of the NYLL. (Compl. ¶ 64; Mem. at 15.) New York law obligates an employer to "furnish each employee with a statement with every payment of wages," that includes specific information about the payment and employer. N.Y. Lab. Law § 195(3).

Here, there is no dispute that Plaintiffs were not paid or provided wage statements in 2017. Plaintiffs have also provided testimony that for each pay period that they were paid late in 2016, Lorelei would pay them with checks from the general ledger, without proper wage statements or pay stubs. (Accosta Decl. ¶ 13; Rosenstock Decl. ¶ 13.) To dispute this, Defendants proffer Totaro's deposition transcript, where she testified that she did not recall whether the Plaintiffs were sometimes not paid through Paychex. (Declaration of Joseph G. Colao, Esq., in Opposition to Plaintiffs' Motion for Summary Judgment ("Colao Decl.") ECF No. 97, Ex. D at 51:3-7.) Viewing the record in the light most favorable to Defendants, there are genuine material facts in dispute regarding whether and when Plaintiffs were paid without wage statements. Therefore, Plaintiffs will be denied summary judgment for this claim.

Accordingly, Accosta is granted summary judgment for claims related to unpaid and untimely wages, and Rosenstock is granted summary judgment for his unpaid wages claim.

## II.     Unjust Enrichment

Plaintiffs allege Defendants were unjustly enriched after they worked full-time in January, February, and March of 2017 and were not paid for their labor, and after they were classified as independent contractors and required to pay the full amount of FICA taxes.  (Compl. ¶ 74; Mem. at 15.)  "To prevail on an unjust enrichment claim [under New York law], a plaintiff must prove that the defendant received a benefit at the plaintiff's expense and that retention of that benefit would be unjust."  *Levion v. SociÉtÉ GÉnÉrale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) (citing *Thayer v. Dial Indus. Sales, Inc.*, 189 F. Supp. 2d 81, 91 (S.D.N.Y. 2002)).

As discussed above, the undisputed record reflects that Plaintiffs worked full time in January, February, and March of 2017, but were not paid their agreed-upon salary.  Plaintiffs aver that they continued working full-time on various projects but received no wages, while Lorelei continued to collect on the contracts for the events.  (Mem. at 15.)  The Court agrees that Lorelei was unjustly enriched by Plaintiffs' free labor.  *See Kossoff v. Felberaum*, 281 F. Supp. 3d 454, 466–67(S.D.N.Y. 2017) (holding the defendant was unjustly enriched by plaintiff's unpaid labor). However, the same cannot be said for Totaro.  "A plaintiff must show that 'services were performed <u>for the defendant</u> resulting in [the latter's] unjust enrichment, and the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment.'"  *Id*. at 465 (citing *Clark v. Daby*, 300 A.D.2d 732, 732 (3d Dep't 2002) (emphasis in original)).  While it is clear that Plaintiffs' work was performed to allow Lorelei to continue to collect client payments, Plaintiffs have failed to show that they also performed and enriched Totaro specifically.

Plaintiffs also aver Defendants "misclassif[ied] Plaintiffs as independent contractors and require[ed] them to pay the full amount of FICA taxes."  (Compl. ¶ 74.)  In support of this

contention, Plaintiffs cite an email from Totaro which states the change in their employment was only internal and Plaintiffs were to continue working as usual. (Mem. at 16.) However, Plaintiffs have not proffered any evidence showing they were misclassified as independent contractors, or that this enriched either Defendant.

Defendants argue that Plaintiffs' claim fails as neither Defendant has been enriched. (Opp. at 10.) However, "a person may be liable in unjust enrichment even though the benefit received as a result of the unjust enrichment did not allow that person to turn a profit." *U.S. East Telecomms. v. U.S. West Communs. Servs.*, 38 F.3d 1289, 1299 n.2 (2d Cir. 1994); *see also Hongxia Wang v. Enlander*, No. 17 Civ. 4932 (LGS), 2018 WL 1276854, at *9 (S.D.N.Y. Mar. 6, 2018) (refusing to dismiss unjust enrichment claim where the defendant accepted "the benefit of Plaintiff's labor and refused to pay her"). Here, it is clear that Lorelei was enriched by Plaintiffs' labor even though the company has no assets.

Accordingly, Plaintiffs are awarded summary judgment for their unjust enrichment claim for unpaid wages against Lorelei only.

### III. ERISA

Plaintiffs' last claim alleges that Lorelei failed to pay their 401(k) contributions and contributions due under ERISA. (Compl. ¶ 71; Mem. at 17.) In response, Defendants argue that Plaintiffs have failed to show that Totaro is an ERISA fiduciary under the statute. (Opp. at 9-10.) However, Plaintiff appears to only be seeking summary judgement for their claim against Lorelei, and therefore this argument is irrelevant. (Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgement ("Reply") ECF No. 101, at 8.)

Under ERISA, a civil action may be brought by an employee "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B).  In order to show Lorelei breached its fiduciary duty under ERISA, Plaintiffs must show "(1) the plan is covered by ERISA, . . . (2) plaintiff is a participant or beneficiary of the plan, . . . and (3) plaintiff was wrongfully denied [benefits] owed under the plan." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009).

Plaintiffs have proffered the two April 7, 2017 agreements between themselves and Lorelei showing that it agreed to pay them 401(k) contributions, which Lorelei does not dispute.[2]  As Plaintiffs have satisfied all three elements of their claim,[3] they are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part.  Accosta is granted summary judgment for his FLSA and NYLL claims for unpaid and untimely wages, and Rosenstock is granted summary judgment for his FLSA and NYLL claims for unpaid wages.  Plaintiffs are also granted summary judgment for their unjust enrichment claims against Lorelei for unpaid wages, and for their ERISA claims against Lorelei.  The remaining claims include Rosenstock's FLSA claim for untimely wages, Plaintiffs' claims against Totaro for unjust enrichment and unpaid benefits under ERISA, and Plaintiffs' claims against both Defendants for failure to provide wage statements and change in compensation notices under the NYLL, and unjust enrichment related to their classification as independent contractors.

The parties are directed to appear for a telephonic pre-trial conference on February 24, 2022 at 2:00 PM.  To access the telephonic pre-trial conference, please follow these instructions:

---

[2] Instead, Lorelei mistakenly uses the standard for claims involving a breach of fiduciary duty based on misrepresentations about coverage under an ERISA plan, and argues Plaintiffs have failed to show a misrepresentation as required under this standard.  (Opp. at 9.)  As made clear above, Plaintiffs need not show a misrepresentation to be successful on their claims.

[3] "A 401(k) plan is a common defined contribution plan" under ERISA.  *Hirt v. Equitable Ret. Plan for Emples., Managers & Agents*, 533 F.3d 102, 104 (2d Cir. 2008).

(1) Dial the meeting number: (877) 336-1839; (2) enter the Access Code: 1231334#; (3) press pound (#) to enter the conference as a guest.

The Court respectfully directs the Clerk of Court to terminate the motion at ECF No. 91.

Dated: January 21, 2022
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge